US District Court for the Middle District of TN

)  Craig Cunningham

)  Plaintiff, pro se

)

)     v.

CIVIL ACTION NO

)

) Rapid Capital Funding, LLC/RCF and Craig Hecker, GRS Telecom, Inc., f/k/a CallerID4U, Inc. Paul Maduno, GIP Technology Inc., Ada Maduno, Luis Martinez, Merchant Worthy, Inc., Robert Bernstein, Bari Bernstein, Mace Horowitz, Spectrum Health Solutions, Inc. dba Spectrum Lead Generation and John/Jane Does 1-5

)

)  Defendants.

## Plaintiff's Original Complaint

1. The Plaintiff in this case is Craig Cunningham, a natural person and was resident of Davidson County at all times relevant to the complaint, and currently has a mailing address of 5543 Edmondson Pike, ste 248, Nashville, TN 37211

2. Rapid Capital Funding, LLC/RCF, LLC is a Florida Corporation operating from 1900 Biscayne Blvd, Ste 201, Miami, FL 33181 and can be served via registered agent and Manager Craig Hecker at 11900 Biscayne Blvd, ste 201 Miami, FL 33181

3. Craig Hecker is a natural person who can be served at 11900 Biscayne Blvd, ste 201 Miami, FL 33181. Craig Hecker is the manager of Rapid Capital Funding, LLC/RCF LLC.

4. GIP Technology, Inc. is a California corporation that can be served via registered agent Ada Maduno at 335 E. Albertoni St., ste 200-853 or at her home address of 4142 West 177th Street, Torrance, CA 90504.

5. GRS Telecom, Inc., formerly known as CallerID4u, Inc., is a Delaware corporation that can be served via registered agent Incorp Services, Inc., 919 North Market Street, ste 425, Wilmington, DE 19801 or via corporate officer at the address of 4142 West 177th Street, Torrance, CA 90504.

6. Paul Maduno is the President of GRS Telecom, Inc., fka Caller ID4U, Inc and can be served at his home address of 4142 West 177th Street, Torrance, CA 90504 or 337 Garden Oaks Blvd #38480, Houston, Tx 77008 or 538 W. 21st Street, ste 38480, Houston, TX 77008 or PO box 8254 Jacksonville, FL 32239.

7. Luis Martinez is the secretary of GRS Telecom, Inc., fka CallerID4U, Inc and can served at 2201 East Willow Street, D349, Signal Hill, CA 90755

8. Merchant Worthy, Inc is a Florida Corporation operating from 150 SW 12th Ave, ste 310 Pompano Beach, FL 33069.

9. Robert Bernstein is the president and registered agent of Merchant Worth Inc., and can be served at 150 SW 12th ave. ste. 310, Pompano Beach, FL 33069.

10. Bari Bernstein is a natural person and can be served at 150 SW 12th Ave., ste 310, Pompano Beach, FL 33069

11. Spectrum Health Solutions, Inc dba Spectrum lead generation is a Florida corporation that can be served via registered agent at 150 SW 12th Ave., ste 310, Pompano Beach, FL 33069.

12. Mace Horowitz is a natural person and officer of Merchant Worthy, Inc and can be served at 150 SW 12th Ave., ste 310, Pompano Beach, FL 33069

## Jurisdiction

13. Jurisdiction of this court arises as the defendants continuous and systematic contacts within the state of Tennessee in placing numerous phone calls to consumers in the state of Tennessee as part of a robocall marketing campaign in which tens of thousands of phone calls were made to consumers across the country. Subject matter jurisdiction is apparent as the TCPA is a federal question under 28 USC 1331.

14. Venue in this District is proper as the defendants are subject to personal jurisdiction based on the continuous and systematic contacts within the forum state of Tennessee. The telephone calls which led to the violations of alleged here occurred in Tennessee. The Defendants made multiple unsolicited telephone calls to the Plaintiff and other Tennessee residents living in Tennessee.

## FACTUAL ALLEGATIONS

15. In 2015 and 2016, the Plaintiff received multiple automated phone calls with a pre-recorded message to the Plaintiff's cell phone, which is 615-212-9191, 615-348-1977, and 615-331-7262. The Plaintiff resolved a previous case with defendant RCF for calls up through approximatley the beginning of August 2016, but again brings this action to reflect claims for new violations of the TCPA that have recently occured as Defendant RCF continued to call the Plaintiff some 30+ times after the original claims against RCF were resolved.

16. The Plaintiff brings claims against Merchant Worthy, Inc and Spectrum Health Solutions, Inc dba Spectrum lead generation as the entities that made the calls before August 1.

**Calls After August 1, 2016**

17. Undaunted by the previous lawsuit, agents acting on behalf of Defendant RCF called the Plaintiff <u>again</u> on 8/10/2016, a mere 19 days after signing the previous agreement with the Plaintiff, to 615-348-1977. The Plaintiff notes that 615-348-1977 is the very same number that the Plaintiff has listed on every filing in this case from the original complaint and has had communications multiple times with back and forth on during the case. The defendants also continued calling the Plaintiff's other cell phone 615-212-9191 and called the Plaintiff's backup cell phone 615-331-7262.

18. The telemarketers were calling from 305-400-4752 to the Plaintiff's 1977 number. RCF called directly from 786-358-9284 to 615-212-9191 at least 4 times and the lead generation company calling on behalf of RCF called the Plaintiff's 9191

number behalf of RCF using caller ID 305-230-4056 at least 6 times. Rapid Capital called the Plaintiff's 7262 number directly from 786-231-1835, 786-209-0019, 786-350-3558, 863-240-1862, and 786-233-6576 at least 20 times in total.

19. The defendants used an offshore 3rd party to contact the Plaintiff who would ask a few basic questions to qualify the Plaintiff then pass the Plaintiff off to a call center in the United States operated by Defendant RCF directly.

20. For these new calls on or after August 10, 2016 the agents used a new script that where the agent asks for the owner of the business, then claims that RCF financial sent an approval notification with a sample check for working capital. The agent then asks a few basic questions about the Plaintiff's level of interest in expanding their business and asked how long the Plaintiff was in business, asked what the Plaintiff was grossing per month, and then transfers the call to RCF directly.

21. The call on or after August 10, 2016 wouldn't connect directly to defendant RCF, as Defendant RCF manipulated their phone system to block incoming calls from the Plaintiff's phone number 615-348-1977, but they apparenlty allowed their telemarketers to continue calling 615-348-1977, the very same number that has been at the bottom of each and every pleading filed in this lawsuit. The net result is that the Plaintiff would continue to get calls from Defendant RCF, but couldn't clearly figure out who was calling him without using another phone to call the defendants.

22. These calls were clearly automated and made by an automated telephone dialing system as defined by 47 USC 227(a)(1), which can store or produce telephone

numbers to be called using a random or sequential number generator. There is no doubt of this as Rapid Capital's application for a loan contains a disclosure which states that they will place calls using an automated telephone dialing system.

### Calls before August 1, 2016

23. The initial calls before August 1, 2016 related to small business loans offered by Rapid Capital and contained a pre-recorded message that said *"Hi, this is Ally calling because we noticed that your business qualified for a business loan of up to $250,000 whether you have good or bad credit. This information is free and there is no obligation. If you have been in business for 3 months and can fill out a simple one page application, we'll get you your money in less than 2 days. To learn more, press 1 now."* The Plaintiff is still in the process of obtaining the lead generation company used by Defendant RCF for the first series of calls before August 1, 2016.

24. When the Plaintiff connected to a representative, he asked if the Plaintiff was grossing at least $10,000 monthly and the length of time the Plaintiff has owned the business. This was an intermediary that was placing telemarketing calls on behaf of Rapid Capital. The Plaintiff was then connected to Andrew with Rapid Capital who asked how much the Plaintiff deposited in his checking account and the amount of the Plaintiff's deposits from credit cards and the Plaintiff's plans for increased working capital.

25. The Plaintiff is unsure how the Defendants obtained his cell phone number as he never gave it to them and never gave express or implied consent for the

defendants to call his cell phone using an automated telephone dialing system or with a pre-recorded message. For the calls to be compliant, the Defendants would have had to obtained the Plaintiff's signature clearly authorizing automated/pre-recorded calls to the Plaintiff's cell phone for the calls to be permitted under the law, and the Plaintiff has signed no such document for any of the defendants.

26. Andrew then stated he was calling on behalf of Rapid Capital funding from Miami and was a direct lender and were not a bank. Andrew then emailed over an application to the Plaintiff and confirmed that the name and address of the entity was "Rapid Capital Funding, 11900 Biscayne Blvd # 201 Miami, FL 33181."

27. Defendant Craig Hecker is the managing partner for Rapid Capital and has an active role in personally supervising, ratifying, and authorizing the illegal telemarketing calls to take place on behalf of and for the benefit of himself and the corporations he manages and as such is directly liable for each and every call made by or on behalf of his company. Defendant Hecker personally failed to take reasonable procedure to stay in compliance with the TCPA.

28. The Plaintiff received phone calls on 3/11, 8/7 three times, 8/10, 8/11, 8/12, 8/13, 8/14, and 8/17 twice, at a minimum and the Plaintiff is in the process of researching other calls. These calls took place in 2015.

29. The calls in question violated 47 USC 227(b) entitling the Plaintiff to a recover of $1500 for making calls using an automated telephone dialing system and containing a pre-recorded message and 47 USC 227(c)(5) as codified by 47 CFR 64.1200 under the FCC's rulemaking authority entitling the Plaintiff to an

additional recovery of $1500 for violating 47 CFR 64.1200(b) 47CFR 64.1200(c), and 47 CFR 64.1200(d) by failing to have a written policy on maintaining a do-not-call list and failure to train personnel on telemarketing.

### CNAM Telecom service providers

30. GIP Technology, GRS Telecom, fka CallerID4u, Inc., Paul Maduno, Ada Maduno, and Luis Martinez all operate a revenue sharing scheme designed around providing anonymity services for illegal telemarketers and all parties involved know are going to make illegal calls with the facilitation and support of CallerID4u/GRS Telecom/GIP Technology.

31. Paul Maduno and his wife Ada Maduno own/control the compaines GIP Technology and GRS Telecom which collectively own over 700,000 phone numbers which are then given away to telemarketers.

32. Not only are the numbers given away for free, but GIP Technology and GRS Telecom actually pay the telemarketers fees for each and every telephone call placed, and the more telephone calls that are made, the more money GIP Technology and GRS telecom make and therefore pass on higher comissions to the telemarketers. Additionally, when providing these numbers to telemarketers, the telemarketers have the ability to alter the name that shows up, so instead of showing "*615-348-1977 Craig Cunningham*" for the caller ID, the call could show "*615-348-1977 Rachel Card Services*"

33. The way the money flows is that each time a phone call is placed that has caller ID enabled, the terminating phone company performs a look-up in a database that

hold caller ID names and numbers. Each time there is a retrieval from this database, the originating phone company (GRS Telecom/GIP Technology) recieves compensation in the form of dip fees. These phone companies incentivise high volume calling by sharing the DIP fee revenue with the telemarketers placing the calls.

34. Most importantly, the CNAM services hide the telecom service provider information from review or public disclosure and in the Plaintiff's experience this is another key element to hide and facilitate the illegal telephone calls. For example, if I knew that a subscriber of Verizon wireless was placing illegal calls to me, I could complain to Verizon and Verizon would most likely shut that account down that is placing the offending calls. With CNAM services, subpoenas typically only go back to the entity that lists the subscriber of the CNAM services, but I have yet to see any actual phone calls being transmitted through the CNAM service provider.

35. There is very little legitimate use for these CNAM services, and they have become a haven for the *Rachel w/card services* scams, IRS scammers, home alarm companies, and vacation cruise companies. Look no further than the Federal Trade Comission et al v Caribbean Cruise Line, Inc., et al in the Southern District of Florida case 0:15-cv-60423-WJZ, in which the FTC brought an enforcement action against Pacific Telecom Communications Group and Fred Accuardi, one of the most prolific CNAM companies in the country that facilitated billions of telephone calls just for a single client, Caribbean Cruise Line, alone.

36. In this case, the overseas call centers utilized another notorious CNAM provider, CallerID4U which is a creation of Paul and Ada Maduno. For example just from January 1, 2012 through November 30, 2012 there were over 138,000 complaints about telephone calls from numbers registered to CallerID4u. Paul and Ada Maduno aggressively seek out only the worst of the worst as far as telemarketers in order to maximize the number of illegal telephone calls that will be placed.

**Actions by Merchant Worthy, Inc. and Spectrum Health Solutions, Inc.**

37. Merchant Worthy, Inc. and Spectrum Health Solutions, Inc. are the entities that placed and initiated the offending calls to the Plaintiff for all calls before August 1, 2016 on behalf of Defendant RCF and may have placed calls after August 1, 2016 as well. The Plaintiff has not yet ascertained what entity placed the additional calls after August 1, 2016 yet.

38. Merchant Worthy, Inc.'s corporate officer Robert Bernstein, admitted to the Plaintiff that they did lead generation on behalf of defendant RCF, LLC "for a long time".

39. The corporate officers stated that they can make automated calls to any number they find on yellow pages and escape liability under the TCPA. Unfortunately for them, this is incorrect.

40. The Defendants made the calls willfully and knowingly as they intended to call the Plaintiff each and every time.

41. Corporate officers Robert Bernstein, Bari Bernstein, and Mace Horowitz are all personally liable for authorizing the offending calls to be placed. The corporate officers sought out entities to place automated calls for and found the Defendants RCF. The corporate officers contracted with Defendant RCF to place calls on behalf of Defendant RCF.

**Actual Damages**

42. The Plaintiff alleges actual damages have been incurred in this case. The repeated and unwelcome phone calls constitue a common law invasion of privacy claim against the defendants as the Plaintiff has a right to be left alone.

43. The conduct of the defendants has resulted in the intentional infliction of emotional distress to include, trouble concentrating, frustruation, inconvenience, stress, and annoyance.

44. The Plaintiff also alleges that the he also suffered actual damages in the form of reduced data plan usage, reduced battery life, increased electrical charged for charging his cell phone battery more frequently.

**CAUSES OF ACTION:**

**COUNT I**

**Violations of the Telephone Consumer Protection Act (TCPA)**

45. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

46. The foregoing actions by the Defendants constitute multiple breaches of the TCPA by placing calls with pre-recorded/automated messages to the Plaintiff's cell phone that lacked the name or address of the entity placing the phone calls in violation of 47 USC(c)(5) as codified by the FCC's rulemaking under 47 CFR 64.1200(d)(4), 47 CFR 64.1200(b), and 47 CFR 64.1200(c) and failed to maintain an internal do-not-call policy and train their employees on the use of an internal do-not-call list.

## CAUSES OF ACTION:

## COUNT II

### Violations of the Telephone Consumer Protection Act (TCPA)

47. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

48. The foregoing actions by the Defendants constitute multiple breaches of the TCPA by placing unsolicited and unwelcome telephone calls to the Plaintiff's cell phone. These phone calls also violated the TCPA by having an pre-recorded message in violation of 47 USC 227(b) and were initiated by an automated telephone dialing system.

### PRAYER FOR DAMAGES AND RELIEFS

A. WHEREFORE, Plaintiff, Cunningham, respectfully prays and requests that judgment be entered against each and every defendant for the following:

B. Statutory damages of $3000 for each phone call.

C. Pre-judgment interest from the date of the phone calls.

D. Attorney's fees for bringing this action; and

E. Costs of bringing this action; and

F. For such other and further relief as the Court may deem just and proper

I, Craig Cunningham, Affiant, hereby attest to and certify that the facts contained in the foregoing complaint are true and correct to the best of my knowledge, information and belief and that a true and correct copy of the foregoing was sent to the defendants in this case.

Respectfully submitted,

*Craig Cunningham*
Plaintiff,

Pro-se, 10/4/2016

Mailing address:

5543 Edmondson Pike, ste 248 Nashville, TN 37211

Nashville, Tn 37211

615-348-1977

