)   Craig Cunningham

)   Plaintiff, pro se

)

)       **v.**

**CIVIL ACTION NO.** 3:16-cv-02629

)

)   RCF II, LLC, RCF, LLC, and Craig Hecker, GRS Telecom, Inc., f/k/a CallerID4U, Inc. Paul Maduno, GIP Technology Inc., Ada Maduno, Luis Martinez, Merchant Worthy, Inc., Robert Bernstein, Bari Bernstein,  Spectrum Health Solutions, Inc. dba Spectrum Lead Generation, Gateway Sales and Marketing, LLC, Telx Computers, Inc., and  and John/Jane Does 1-5

)

)   Defendants.

**Plaintiff's Second Amended Complaint**

1.  The Plaintiff in this case is Craig Cunningham, a natural person and was resident of Davidson County at all times relevant to the complaint, and currently has a mailing address of 5543 Edmondson Pike, ste 248, Nashville, TN 37211

2.  RCF, LLC is a Florida Corporation operating from 1900 Biscayne Blvd, Ste 201, Miami, FL 33181 and can be served via registered agent Rodrigo Fritis 416 91st, Surfisde, FL 33154 or Manager Craig Hecker at 11900 Biscayne Blvd, ste 201 Miami, FL 33181

3.  RCF II, LLC is a Florida Corporation operating from 1900 Biscayne Blvd, Ste 201, Miami, FL 33181 and can be served via registered agent Rodrigo Fritis 416

91st, Surfisde, FL 33154 or  Manager Craig Hecker at 11900 Biscayne Blvd, ste 201 Miami, FL 33181

4. Craig Hecker is a natural person who can be served at 11900 Biscayne Blvd, ste 201 Miami, FL 33181. Craig Hecker is the manager of RCF II, LLC and RCF, LLC.

5. GIP Technology, Inc. is a California corporation that can be served via registered agent Ada Maduno at 335 E. Albertoni St., ste 200-853, Carson, CA 90746 or at her home address of 4142 West 177th Street, Torrance, CA 90504.

6. Ada Maduno is a natural person and can be served at 335 E. Albertoni St., ste 200-853, Carson, CA 90746 or her home address of 4142 West 177th Street, Torrance, CA 90504.

7. GRS Telecom, Inc., formerly known as CallerID4u, Inc., is a Delaware corporation that can be served via registered agent Incorp Services, Inc., 919 North Market Street, ste 425, Wilmington, DE 19801 or via corporate officer at the address of 4142 West 177th Street, Torrance, CA 90504.

8. Paul Maduno is the President of GRS Telecom, Inc., fka Caller ID4U, Inc and can be served at his home address of 4142 West 177th Street, Torrance, CA 90504 or 337 Garden Oaks Blvd #38480, Houston, Tx 77008 or 538 W. 21st Street, ste 38480, Houston, TX 77008 or PO box 8254 Jacksonville, FL 32239.

9. Luis Martinez is the secretary of GRS Telecom, Inc., fka CallerID4U, Inc and can served at 2201 East Willow Street, D349, Signal Hill, CA 90755 or at 337 Garden

Oaks Blvd., suite 38480, Houston, Tx 77018 or 4142 West 177th Street, Torrance, CA 90504.

10. Merchant Worthy, Inc is a Florida Corporation operating from 150 SW 12th Ave, ste 310 Pompano Beach, FL 33069.

11. Robert Bernstein is the president and registered agent of Merchant Worth Inc., and can be served at 150 SW 12th ave. ste. 310, Pompano Beach, FL 33069.

12. Bari Bernstein is a natural person and can be served at 150 SW 12th Ave., ste 310, Pompano Beach, FL 33069

13. Spectrum Health Solutions, Inc dba Spectrum lead generation is a Florida corporation that can be served via registered agent at 150 SW 12th Ave., ste 310, Pompano Beach, FL 33069.

14. Gateway Sales & Marketing LLC is a Florida corporation operating from 2200 N. Commerce Parkway, ste 20, Weston, FL 33326. The registered agent is Jose Alberto Calero, 2200 N. Commerce Parkway, ste 200, Weston FL 33326.

15. Telx Computers, Inc., is a Florida corporation operating from 17401 NW 2nd Ave., ste 4, Miami Gardens, FL 33169 and can be served via registered agent Avishai Vaknin 17401 NW 2nd Ave., ste 4, Miami Gardens, FL 33169.

**Jurisdiction**

16. Jurisdiction of this court arises as the defendants continuous and systematic contacts within the state of Tennessee in placing numerous phone calls to consumers in the state of Tennessee as part of a robocall marketing campaign in

which tens of thousands of phone calls were made to consumers across the country. Subject matter jurisdiction is apparent as the TCPA is a federal question under 28 USC 1331.

17. Venue in this District is proper as the defendants are subject to personal jurisdiction based on the continuous and systematic contacts within the forum state of Tennessee. The telephone calls which led to the violations of alleged here occurred in Tennessee. The Defendants made multiple unsolicited telephone calls to the Plaintiff and other Tennessee residents living in Tennessee.

## FACTUAL ALLEGATIONS

18. In 2015 and 2016, the Plaintiff received multiple automated phone calls with a pre-recorded message to the Plaintiff's cell phone, which is 615-212-9191, 615-348-1977, and 615-331-7262. The Plaintiff resolved the case with defendant RCF for calls up through approximatley the beginning of August 2016, but needs to amend his complaint to reflect claims for new violations of the TCPA that have recently occured as Defendant RCF continued to call the Plaintiff some 30+ times after the original claims against RCF were resolved. This amendment includes new defendants and new facts in response to the Defendant's motions to dismiss, pursuant to FRCP rule 15.

19. For clarity, the Plaintiff has identified 2 blocks of calls from the defendants. Calls that occured before August 1, 2016 and calls that occured after August 1, 2016.

20. The common element between these calls that all the calls were on behalf of or for the benefit of Defendants RCF, LLC and RCF II, LLC, as the loan services of RCF and RCF II were offered during the calls.

21. The Plaintiff sued Defendant RCF previously in Cunningham v Rapid Capital Finance, 3:15-cv-00957 in 2015. The Plaintiff sought to amend his complaint in the 00957 case, but this was denied in October 2016 and the court noted that if the Plaintiff sought to bring a cause of action against the defendant he should file a new lawsuit.

22. Additionally, as Defendant RCF started calling the Plaintiff after August 1, 2016, thus it was clear to the Plaintiff that another lawsuit against Defendant RCF would be in order to bring claims against the parties GIP Tech, the Maduno defendants, and GRS Telecom/CallerID4U and to reflect the new claims against Defendant RCF that occured after he resolved his claims against Defendant RCF in the 00957 case.

23. Just because the Plaintiff resolved his claims aganist Defendant RCF in the 00957 case does not resolve claims against other defendants just recently identified to the Plainitff on September 20th 2016 by Lawren Zann, counsel of RCF and on September 27, 2016 by Defendant GRS Telecom fka CallerID4U.

24. Furthermore, the Plaintiff is not seeking to re-allege any claims against Craig Hecker or any of his corporations for the calls placed before August 1, 2016. That said, for any and all calls placed by and on behalf of Craig Hecker's and his corporations RCF and RCF II, after August 1, 2016, the Plaintiff does allege new,

unresolved allegations for new calls that occured after the parties resolved the claims in the 00957 lawsuit.

25. For the calls before August 1, 2016, the Plaintiff is alleging claims against Merchant Worthy, Inc., and Spectrum Health Solutions, Inc., and the Bernstein defendants (Robert and Bari) with direct liability as these were the parties that initiated the calls to the Plaintiff's cell phone. The Plaintiff does not allege any liability against these parties for calls placed after August 1, 2016 in this case.

26. For the calls before August 1, 2016, the Plaintiff alleges the calls were made on behalf of and for the benefit of the Maduno Defendants (Paul and Ada) and Luis Martinez, and GIP Technology and GRS Telecom, fka CallerID4u. The Plaintiff does not allege any liability against these parties for calls placed after August 1, 2016 in this case.

27. For calls that occured after August 1, 2016, the Plaitniff alleges that the calls were initiated and thus direct liability attaches to Gateway Sales and Marketing and Telx Computers.

28. The calls after August 1, 2016 were on behalf of and for the benefit of Craig Hecker, RCF, LLC, and RCF II, LLC. For the calls initiated by Gateway sales and Marketing and Telx Comptuers, the Plaintiff alleges vicarious liability and on behalf of liability and vicarious against Defendant RCF, RCF II , and Craig Hecker. For the calls initiated by Defendant RCF and RCF II directly, the Plaintiff asserts directly liability against RCF and RCF II and Craig Hecker only.

29. The Plaintiff alleges for the two segments of calls that all of the defendants acted in concert in placing the offending calls.

## Calls After August 1, 2016

30. Undaunted by the previous lawsuit, Defendant RCF hired Gateway Sales and Marketing (hereafter Gateway) and Telx Computers (hereafter Telx) to initiate calls to the Plaintiff's cell phones knowing that the Plaintiff did not want calls from them or calls that were initiated by an automated telephone dialing system to his cell phone. By filing a lawsuit in 2015 against Defendant RCF for illegal telemarketing, Defendant RCF and RCF II were on notice that the Plaintiff did not want to receive automated calls or calls with a pre-recorded message and should have placed the Plaintiff on an internal Do-not-call list, which they are required to have pursuant to 47 CFR 64.1200(d). Each of the following described telephone calls was initiated by an automated telephone dialing System (ATDS) as defined by the TCPA, 47 USC 227.

31. Gateway and Telx called the Plaintiff <u>again</u> on behalf of Defendants RCF and RCF II and at the direction of Craig Hecker on 8/10/2016, a mere 19 days after signing the previous agreement with the Plaintiff, to 615-348-1977. The Plaintiff notes that 615-348-1977 is the very same number that the Plaintiff has listed on every filing in this case from the original complaint and has had communications multiple times with back and forth on during the case. The defendants also continued calling the Plaintiff's other cell phone 615-212-9191 and called the Plaintiff's backup cell phone 615-331-7262.

32. Telx and Gateway were calling from 305-400-4752 to the Plaintiff's 1977 number. RCF and RCF II called the Plaintiff directly at the direction of Craig Hecker from 786-358-9284 to 615-212-9191 at least 4 times and Gateway and Telx calling on behalf of RCF and at the direction of Craig Hecker called the Plaintiff's 9191 number behalf of RCF using caller ID 305-230-4056 at least 6 times. Defendant RCF and RCF II called the Plaintiff's 615-331-7262 number at the instruction of Craig Hecker from 786-231-1835, 786-209-0019, 786-350-3558, 863-240-1862, and 786-233-6576 at least 20 times in total.

33. The dates and numbers regarding the calls to **615-212-9191** are as follows:

34. from 305-260-6342 to 615-212-9191 on 9/6/2016 seven times.

35. from 786-449-0861 three times on 9/9/2016

36. from 786-358-9284 four times on 9/15/2016

37. from 786-358-9284 on 9/19/2016

38. from 786-350-3444 on 9/20

39. The Dates and numbers regarding the calls to **615-348-1977** are as follows:

40. On 8/20/2016 from 863-240-1862

41. on 8/10/2016, 8/19/2016, and 9/2/2016 all from 305-400-4752 to his cell phone 615-348-1977.

42. The dates and numbers regarding the calls to **615-331-7262** are as follows:

43. on from 786-231-1835  8/10/2016 twice, on 8/11/2016 once, on 8/12/2016 once

44. from 786-209-0019 on 8/16/2016, on 8/17/216 four times, on 8/19/2016, on 8/24/2016, on 8/25

45. From 786-233-9788 on 8/25/2016 twice,

46. From 786-350-3558 on 9/2/2016

47. From 787-209-0019 and 786-350-3558 on 9/6/2016

48. From 786-350-3558 three times and 786-209-0019 on 9/7/2016

49. From 786-350-3558 twice on 9/8/2016

50. From 786-209-0019 on 9/9/2016

51. From 786-233-6576 on 9/12/2016

52. The RCF and RCF II acting at the direction of Craig Hecker willfully and knowingly hired Gateway Sales and Marketing and Telx to initiate calls to the Plaintiff who would ask a few basic questions to qualify the Plaintiff then pass the Plaintiff off to a call center in the United States operated by Defendant RCF and RCF II directly.

53. For these new calls initiated  by Gateway and Telx on or after August 10, 2016 the agents used a new script that where the agent asks for the owner of the business, then claims that RCF financial sent an approval notification with a sample check for working capital. The agent then asks a few basic questions about the Plaintiff's level of interest in expanding their business and asked how long the

Plaintiff was in business, asked what the Plaintiff was grossing per month, and then transfers the call to RCF directly.

**Characteristics of the calls that confirm the use of an ATDS**

54. The Plaintiff noticed for each and every call described above the tell-tale 3-4 second of dead air when the call started, a static filled connection and the accent of the caller suggested the call was initiated from overseas, which from the Plaintiff's experience, overseas call centers always use automated telephone dialing systems, and on one call on 9/2/2016 from 305-400-4752 to 615-348-1977, the entire call was 8 sconds of dead air indicating the caller was likely using a predictive dialer, which is defined as an ATDS by the FCC, and the overseas call center ran out of agents to connect calls to and thus dropped the call after 8 seconds.

55. The call on or after August 10, 2016 wouldn't connect directly to defendant RCF, as Defendant RCF manipulated their phone system to block incoming calls from the Plaintiff's phone number 615-348-1977, but they apparenlty allowed their telemarketers to continue calling 615-348-1977, the very same number that has been at the bottom of each and every pleading filed in this lawsuit. The net result is that the Plaintiff would continue to get calls from Defendant RCF, but couldn't clearly figure out who was calling him without using another phone to call the defendants.

56. These calls were clearly automated and made by an automated telephone dialing system as defined by 47 USC 227(a)(1), which can store or produce telephone

numbers to be called using a random or sequential number generator. There is no doubt of this as Rapid Capital's application for a loan contains a disclosure which states that they will place calls using an automated telephone dialing system.

**Calls before August 1, 2016**

57. The initial calls before August 1, 2016 related to small business loans offered by Rapid Capital and contained a pre-recorded message that said *"Hi, this is Ally calling because we noticed that your business qualified for a business loan of up to $250,000 whether you have good or bad credit. This information is free and there is no obligation. If you have been in business for 3 months and can fill out a simple one page application, we'll get you your money in less than 2 days. To learn more, press 1 now."*

58. When the Plaintiff connected to a representative, he asked if the Plaintiff was grossing at least $10,000 monthly and the length of time the Plaintiff has owned the business. This was an intermediary that was placing telemarketing calls on behalf of Rapid Capital. The Plaintiff was then connected to Andrew with Rapid Capital who asked how much the Plaintiff deposited in his checking account and the amount of the Plaintiff's deposits from credit cards and the Plaintiff's plans for increased working capital.

59. The Plaintiff is unsure how the Defendants obtained his cell phone number as he never gave it to them and never gave express or implied consent for the defendants to call his cell phone using an automated telephone dialing system or with a pre-recorded message. For the calls to be compliant, the Defendants would

have had to obtained the Plaintiff's signature clearly authorizing automated/pre-recorded calls to the Plaintiff's cell phone for the calls to be permitted under the law, and the Plaintiff has signed no such document for any of the defendants.

60. Andrew then stated he was calling on behalf of Rapid Capital funding from Miami and was a direct lender and were not a bank. Andrew then emailed over an application to the Plaintiff and confirmed that the name and address of the entity was "Rapid Capital Funding, 11900 Biscayne Blvd # 201 Miami, FL 33181."

61. Defendant Craig Hecker is the managing partner for Rapid Capital and has an active role in personally supervising, ratifying, and authorizing the illegal telemarketing calls to take place on behalf of and for the benefit of himself and the corporations he manages and as such is directly liable for each and every call made by or on behalf of his company. Defendant Hecker personally failed to take reasonable procedure to stay in compliance with the TCPA. These calls took place in 2015. The calls took place on the following dates

62. on 3/11, from 305-615-2960 to 615-212-9191

63. on 8/7 three times from 402-385-5404 to 615-212-9191 which contained a pre-recorded message and did not state the name of the entity placing the call and 305-203-5217 twice to 615-212-9191,

64. on 8/10 from 305-203-5217 to 615-212-9191 at 10:57 and 17:19

65. on 8/11 from 973-250-2523 to 615-212-9191 at 10:08, This was a spoofed caller ID

66. on 8/12 from 305-203-5217 to 615-212-9191 twice at 14:12 and 18:01,

67. on 8/13 from 305-203-5217 to 615-212-9191 at 12:00

68. on 8/14 from 786-288-3729 to 615-212-9191 at 11:12 and 305-203-5217 to 615-212-9191 at 12:16, and

69. 8/17 twice, from 786-288-3729 to 615-212-9191 at 10:51 and 14:26

70. on 11/6/2016 from 469-319-1104 ot 615-212-9191 at 9:08

71. on 9/15/2015 twice from 754-209-0194 to 615-212-9191

**72.** The calls in question violated 47 USC 227(b) entitling the Plaintiff to a recover of $1500 for making calls using an automated telephone dialing system and containing a pre-recorded message and 47 USC 227(c)(5) as codified by 47 CFR 64.1200 under the FCC's rulemaking authority entitling the Plaintiff to an additional recovery of $1500 for violating 47 CFR 64.1200(b) 47CFR 64.1200(c), and 47 CFR 64.1200(d) by failing to have a written policy on maintaining a do-not-call list and failure to train personnel on telemarketing.

## CNAM Telecom service providers Liability

73. GIP Technology, GRS Telecom, fka CallerID4u, Inc., Paul Maduno, Ada Maduno, and Luis Martinez, (hereafter Maduno Defendants) all operate a revenue sharing scheme designed around  providing anonymity services for illegal telemarketers, incentivizing illegal telehone calls by telemarketers by paying telemarketers for each and every call placed, receiving payment from telecom providers in the form of DIP Fee payments, and by seeking out individuals they

know will make large numbers of illegal telephone calls to increase the number of calls and subsequent DIP fee payouts. All parties involved know are going to make illegal calls with the facilitation and financial support of CallerID4u/GRS Telecom/GIP Technology.

74. The Plaintiff need not allege that GRS Telecom directly placed the offending calls to his cell phone to assert liability against them. The Plaintiff need only demonstrate that the calls were illegal and that GRS Telecom stood to profit in any way from the illegal calls. Courts have repeatedly ruled on this issue finding that 3rd parties that hire or benefit from the illegal calls can be held liable for illegal telemarketing. See *Birchmeier v Caribbean Cruise Line, Inc., E.D. Illinois 2012 docket 75*. *The Court also rejects defendants' contention that liability attaches under the TCPA only to the party that actually placed the call. To offer an example, suppose that A, a well-heeled entity that wants to sell a product or service, stands next to B, an impecunious defendant, and directs A to place unsolicited, prerecorded calls to consumers on their cell phones. Defendants' position, it appears, is that only B, the impecunious dialer, would be liable and that A would get off scot-free. A Congressional enactment that permitted this would be absurd indeed. Fortunately that is not the law under the TCPA*. See, e.g., In re Jiffy Lube Int'l, Inc. Text Spam Litig., 847 F. Supp. 2d 1253, 1256-58 (S.D. Cal. 2012); Bridgeview Health Care Center Ltd. v. Clark, 2011 WL 4585028, at *4-5 (N.D. Ill. Sept.30, 2011); Desai v. ADT Sec. Servs., Inc., No. 11 C 1925, 2011 WL 2837435, at *1 (N.D. Ill. July 18, 2011)

75. Additionally, the FCC's 2013 Declaratory ruling on the Dish Network et al Petition, FCC 13-54, released May 9, 2013 indicated quite clearly years ago that a 3rd party that never placed a call may still be held vicariously liable under the TCPA on page 1 of the introduction where they state: *We clarify that while a seller*

*does not generally "initiate" calls made through a third-party telemarketer,*
*within the meaning of the TCPA, it nonetheless may be held vicariously liable*
*under Federal common law principles of agency for violations of either section*
*227(b) or section 227(c) that are committed by third-party telemarketers"*

76. The FCC has repeated this over the years going back more than 20 years to a 1995 order cited in the 2013 order where they state: *"Our rules generally establish that the party on whose behalf a solicitaiton is made bears ultimate responsibility for any violations. Calls placed by an agent of the telemarketer is treated as if the telemarketer itself placed the call."*

77. It is hard to find a more direct example of benefitting from an action other than cold hard, cash payments, which is what GRS Telecom, and GIP Tech received for placing illegal calls to the Plaintiff among millions of other consumers as a result of the calls by Merchant Worthy Inc., and Spectrum Health Inc.

78. Caller ID's 402-385-5404, 850-344-9281, and 973-250-2523 were all assigned to GRS Telecom, Inc., fka CallerID4u in 2015 and assigned the caller ID's to Spectrum Lead Generation and Merchant Worthy, Inc., in 2015. How do I know this? Because GRS Telecom, Inc., responded to a subpoena about these 3 specific numbers in 2015 stating that *"The mentioned DID (Direct Inward Dial) number had been assigned at the specified time period to the former customer: Spectrum Lead Generation"* and the subpoena response lists the above 3 caller ID numbers.

79. Additionally, Rapid Capital's lawyer responded to a subpoena stating that Merchant Worthy, Inc., placed the calls to the Plaintiff on behalf of Rapid Capital.

80. The above 3 caller ID's were also assigned to GIP Technology in 2015 as well.

81. These 3 caller ID numbers were used to call the Plaintiff in 2015 by Merchant Worthy, Inc. and Spectrum Health Solution dba Spectrum Lead Generation with calls that were initiated by an automated telephone dialing system and contained pre-recorded message. These calls were placed without the Plaintiff's consent and without an emergency purpose.

82. These calls related to small business loans offered by Rapid Capital and contained a pre-recorded message that said *"Hi, this is Ally calling because we noticed that your business qualified for a business loan of up to $250,000 whether you have good or bad credit. This information is free and there is no obligation. If you have been in business for 3 months and can fill out a simple one page application, we'll get you your money in less than 2 days. To learn more, press 1 now.*" There was a 3-4 second delay between the Plaintiff answering the phone and the pre-recorded message starting as well.

83. Specifically, the Plaintiff recieved 3 calls from 402-385-5404 on 8/7/2015 and one on 8/11/2015 from 973-250-2523 and 850-344-9281 sometime in 2015. The Plaintiff notes that GRS Telecom was functioning and in business until September 2015, and these calls occured before September 2015 when they were still operating. The Planitiff will be able to ascertain the exact date of the calls for the 850 number in the coming weeks when he obtains his phone records from his carrier, but it was before September 2015 when GRS Telecom was out of business.

84. Paul Maduno and his wife Ada Maduno own/control the compaines GIP Technology and GRS Telecom which collectively own over 700,000 phone numbers which are then given away to telemarketers.

85. Not only are the numbers given away for free, but GIP Technology and GRS Telecom actually paid  Merchant worthy, Inc. and Spectrum Health Solutions Inc monthly fees for each and every telephone call placed, and the more telephone calls that are made, the more money GIP Technology and GRS telecom make and therefore pass on higher comissions to the telemarketers.

86. The Plaintiff alleges that by receiving payments as the fruit of the illegal telemarketing calls, the Maduno defendants and their respective companies are vicariously liable for the TCPA violations. In the alternative, by paying telemarketers like Merchant Worthy, Inc and Spectrum Health Solutions, Inc. to place illegal calls and contracting with telemarketers like Merchant Worthy, Inc., and Spectrum Health Solutions in a revenue sharing scheme centered around telemarketing calls, the Maduno defendants and their respective corporations are vicariously liable for any TCPA violations committed by individuals using the caller ID numbers provided by GRS Telecom/GIP Technology.

87. The way the money flows is that each time a phone call is placed that has caller ID enabled, the terminating phone company performs a look-up in a database that hold caller ID names and numbers. Each time there is a retrieval from this database, the company assigned the Caller ID numbers (GRS Telecom/GIP Technology) recieves compensation in the form of dip fees. These phone

companies incentivise high volume, illegal calling by sharing the DIP fee revenue with the telemarketers placing the calls.

88. Most importantly, the CNAM services hide the telecom service provider information from review or public disclosure and in the Plaintiff's experience this is another key element to hide and facilitate the illegal telephone calls. For example, if I knew that a subscriber of Verizon wireless was placing illegal calls to me, I could complain to Verizon and Verizon would most likely shut that account down that is placing the offending calls. With CNAM services, subpoenas typically only go back to the entity that lists the subscriber of the CNAM services, but I have yet to see any actual phone calls being transmitted through the CNAM service provider.

89. There is very little legitimate use for these CNAM services, and they have become a haven for the "*Rachel w/card services*" scams, IRS scammers, home alarm companies, and vacation cruise companies. Look no further than the Federal Trade Comission et al v Caribbean Cruise Line, Inc., et al in the Southern District of Florida case 0:15-cv-60423-WJZ, in which the FTC brought an enforcement action against Pacific Telecom Communications Group and Fred Accuardi, one of the most prolific CNAM companies in the country that facilitated billions of telephone calls just for a single client, Caribbean Cruise Line, alone. This just goes to illustrate how a Federal regulator is holding a CNAM company accountable for making billions of illegal telephone calls and is illustrative of legal precedent for an abusive CNAM company being held accountable in court.

90. In this case, the overseas call centers utilized another notorious CNAM provider, CallerID4U which is a creation of Paul and Ada Maduno. For example just from January 1, 2012 through November 30, 2012 there were over 138,000 complaints about telephone calls from numbers registered to CallerID4u. Paul and Ada Maduno aggressively seek out only the worst of the worst as far as telemarketers in order to maximize the number of illegal telephone calls that will be placed.

91. GRS Telecom, Paul Maduno, Ada Maduno, and GIP Technology (hereafter Maduno Defendants) both were paid by telecom companies in the form of DIP fees for each and every illegal call and paid telemarketers for calls that were placed to the Plaintiff by and on behalf of Defendant RCF LLC, particularly for the calls before August 1, 2016. The Plaintiff is in the process of obtaining his phone records and shall provide the calls in question in discovery. The calls placed on behalf of Defendant RCF were also placed for the benefit of the Maduno defendants.

92. The Maduno Defendants profited directly from each and every illegal call placed to the Plaintiff that were also placed on behalf of Defendant RCF, LLC. The Maduno Defendants paid Merchant Worthy, Inc. or Spectrum Health Solutions, Inc., for each and every call that Merchant Worthy or Spectrum Health Solutions placed directly for the benefit of Defendant RCF and the Maduno Defendants.

93. The Maduno defendants are directly liable for the calls in question or in the alternative are vicariously liable for the calls in question as the calls were made for their benefit. Paying telemarketers to make illegal calls as the Maduno

Defendants have done is no different than paying telemarketers to make illegal calls as Defendant RCF has done.

94. The Maduno defendants are vicariously liable under commonlaw agency principles of ratification, actual authority or apparent authority.

95. First, there is a dierct contractual relationship between Merchant Worthy, Inc./Spectrum Health Solutions and GRS Telecom, Inc. as demonstrated by a Master Service Agreement with GRS Telecom/CallerID4u.

96. The Maduno defendants ratified the conduct of the telemarketers by paying them thouands of dollars in DIP fee commissions for placing illegal calls to the Plaintiff among others.

**Vicarious Liability of the Maduno Defendants and GRS Telecom/GIP Technology**

97. An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent to so act.

98. In this case, the Merchant Worthy Inc and Spectrum Health were acting as agents on behalf of GRS Telecom/GIP Technology. This manifestation is a contractual Master Service Agreement signed by the parties relating to a revenue sharing agreement and the use of Caller ID numbers provided by GRS Telecom to Merchant Worthy and Spectrum Health.

99. A finding of actual authority requires a manifestation by the principal that the agent shall act for them.

100.     Lastly, there is an understanding that the principal is in control of
the undertaking.

101.     The Master Service agreement signed by GRS Telecom and
Merchant Worthy/Spectrum health demonstrates that GRS Telecom is in
charge of the undertaking and can terminate services and payments to
Merchant Worthy/Spectrum Health at any time, including for making illegal
telemarketing calls not in compliance with the Telemarketing Sales Rule or
Telephone Consumer Protection Act.

102.     As such, under the concept of actual authority, GRS Telecom is
vicariously liable for any TCPA violations by Merchant Worthy/Spectrum
Health.


## GRS Telecom/GIP Technology  is vicariously liable under the concept of
## Ratification

103.     Defendant GRS Telecom ratified the conduct of their agents,
Merchant Worthy and Spectrum Health knowingly accepting the benefits in
the form of millions of dollars in DIP Fees generated from the illegal
telephone calsl from these agents marketing in an illegal fashion.

## GRS Telecom/GIP Technology is vicariously liable as any other finding
## would undermine the deterrent effect and purpose of the TCPA

104.     As the FCC noted in the Dish network petition, the vicarious liability
theory is only one way that defendants may be held liable for 3rd parties
they hire to violate the law. As noted in Jackson v Caribbean Cruise Line,

2:2014-cv-02485, document 83 (2015) "*a number of courts have considered whether a defendant my nonetheless be held vicariously liable under the TCPA in accordance with traditional tort principles. The overwhelming majority have answered that question in the affirmative.*" additionally, the court held that "*Some courts have looked to the purpose of the TCPA and found that to hold otherwise, that is to decline to recognize potential vicarious liability under the statute would undermine its deterrent effect. See Bank, No. 12-cv-584, at 18-18 ECF No. 49 ("If a company were allowed to avoid TCPA liability by merely hiring a different company to make unlawful calls, the statute would lose its deterrent effect. Vicarious liability prevents this liability maneuvering"*) and cited "Birchmeier v Caribbean Cruise Line, Inc., No. 12 C 4069 (MFK), 2012 WL 7062748, at *1 (N.D. Ill. Dec 31, 2012) *("To offer an example, suppose that A, a well heeled entity wants to sell a product or service, stands next to B, an impecunious defendant, and directs B to place unsolicited, prerecorded calls to consumers on their cell phones. Defendants' position, it appears, is that only B, th impecunious dialer, would be liable, and that A would get off scot-free. A Congressional enactment that permitted this would be absurd indeed. Fortunately that is not the law under the TCPA")*

105. Under this rationale, doing anything other than holding GRS Telecom/GIP technology as vicariously liable for the actions of the agents they allowed, contracted with, and paid to place illegal telemarketing calls for the benefit of GRS Telecom/GIP Technology would lead to an absurd

result allowing GRS Telecom to get off scot-free, undermine the deterrent effect of the TCPA, and run counter to the overwhelming majority of courts that have reviewed similar TCPA decisions.

**Actions by Merchant Worthy, Inc. and Spectrum Health Solutions, Inc.**

106. Merchant Worthy, Inc. and Spectrum Health Solutions, Inc. are the entities that placed and initiated the offending calls to the Plaintiff at the direction of Robert Bernstein and Bari Bernstein for all calls listed below and both corporate entities and both corporate officers are directly liable for the willful and knowing conduct that violated the TCPA.

107. The Plaintiff has identified 3 caller ID numbers associated with Spectrum Lead Generation, which are 402-385-5404, 850-344-9281, and 973-250-2523 that placed calls to the Plaintiff's cell phone and were initiated by Merchant Worthy, Inc., and Spectrum Health Solutions, Inc. at the direction of Robert and Bari Bernstein. GRS Telecom Inc., indicated that the phone numbers were assigned to Spectrum Lead Generation, a DBA of Spectrum Health Solutions, Inc., on September 27, 2016 but Lawren Zann represented to the Plaintiff that the calls were placed by Merchant Worthy Inc., on behalf of Defendant Rapid Capital on September 20, 2016.

108. Despite this conflicting information, the common element of these entities is Robert and Bari Bernstein who are the corporate officers of both and directed the conduct and actions of the entities, which included lead generation via telemarketing on behalf of Defendant RCF, LLC.

109. These calls occured on 8/7/2015 from 402-385-5404 and 8/11 2015 from 973-250-2523 to the Plaintiff's cell phone 615-212-9191, but the Plaintiff is seeking additional records from his phone company which will show additional calls were made. The Plaintiff shall circulate a complete list of the calls to all the defendants when the call records are available. These calls were initiated by an automated telephone dialing system and contained a pre-recorded message and were initiated by Merchant Worthy, Inc. and Spectrum Health Solutions, Inc., at the knowing and willful direction of corporate officers Bari and Robert Bernstein. At no time were the calls related to any emergency purpose, and the callers did not have the Plaintiff's consent to be called.

110. Merchant Worthy, Inc.'s corporate officer Robert Bernstein, admitted to the Plaintiff that they did lead generation on behalf of defendant RCF, LLC "for a long time". The corporate officers stated that they can make automated calls to any number they find on yellow pages without consent and using an automated telephone dialing system and pre-recorded message and escape liability under the TCPA. Robert Bernstein stated he observed the Plaintiff's cell phone number in some unspecified yellow pages and and thus conclused that he had express written consent to send ATDS initiated telephone calls to the Plaintiff' cell phone that contained a pre-recorded message. Unfortunately for them, this is incorrect, but it shows the willfull and knowing elements of these violations of the TCPA.

111. In 2015, the Plaintiff received multiple automated phone calls with a pre-recorded message to the Plaintiff's cell phone, which was 615-212-9191at the time. These calls were clearly automated and made by an automated telephone

dialing system as defined by 47 USC 227(a)(1), which can store or produce telephone numbers to be called using a random or sequential number generator.

112. These calls related to small business loans offered by Rapid Capital and contained a pre-recorded message that said *"Hi, this is Ally calling because we noticed that your business qualified for a business loan of up to $250,000 whether you have good or bad credit. This information is free and there is no obligation. If you have been in business for 3 months and can fill out a simple one page application, we'll get you your money in less than 2 days. To learn more, press 1 now."*

113. The calls to the Plaintiff identified in this section were initiated knowingly and willfully by Defendants Merchant Worthy, Inc., and Spectrum Health Solutions, Inc., at the direction of corporate officer Robert Bernstein and Bari Bernstein.

114. The Defendants made the calls willfully and knowingly as they intended to call the Plaintiff each and every time. Additionally, by knowingly placing a call to Tennessee residents, the Defendants and their corporate officers are subject to personal jurisdiction in Tennessee.

115. The Plaintiff need not peirce the corporate veil to attach liablity to a corporate officer. As indicated in Jackson's Five Star Catering, Inc., v Beason, et al no 2:10-cv-10010 ED. Michigan. Courts in the 6th Circuit have held *"that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute"* In this case, Corporate officers by their admissions made

clear they had personal participation in the illegal calls and personally authorized the calls to be initiated.

116. Corporate officers Robert Bernstein, Bari Bernstein, and Mace Horowitz are all personally liable for authorizing the offending calls to be placed. The corporate officers sought out entities to place automated calls for and found the Defendants RCF. The corporate officers contracted with Defendant RCF to place calls on behalf of Defendant RCF.

**Actions by Gateway Sales & Marketing, LLC and Telx Computers, Inc.**

117. Picking up the baton of illegal telemarketing on behalf of Defendant RCF, Gateway Sales & Marketing, LLC, and Telx Computers (hereafter Defendant Gateway and Telx) entered the picture placing calls on behalf of Defendant RCF and RCF II after August 1, 2016.

118. The Plaintiff recieved calls on 8/10/2016, 8/19/2016, and 9/2/2016 all from 305-400-4752 to his cell phone 615-348-1977, which were initiated by an automated telephone dialing system (hereafter ATDS) as defined by the TCPA, 47 USC 227 knowingly and willfully initiated by Gateway Sales and Marketing, LLC and Telx Computers, Inc.

119. The Plaintiff recieved a call to his cell phone from 305-400-4752 to his cell phone 615-331-7262 on 8/10/2016 which was initiated by an automated telephone dialing system (hereafter ATDS) as defined by the TCPA, 47 USC 227 knowingly and willfully initiated by Gateway Sales and Marketing, LLC and Telx Computers, Inc.

120. The Plaintiff received seven calls to his cell phone **615-212-9191** from 305-260-6342 to 615-212-9191 on 9/6/2016.

121. Defendant Gateway Sales and Marketing, LLC and Telx Computers Inc. are the entities directly responsible for placing the calls to the Plaintiff in the section described as "Calls after August 1, 2016" as described above.

122. Defendant Gateway initiated the calls using an automated telephone dialing system as described by the TCPA, 47 USC 227 and violated 47 USC 227(b) placing automated calls to the Plaintiff's cell phone without consent and without an emergency purpose. Furthermore, Defendant Gateway lacks an internal do-not-call list and has not trained its agents or employees on the use of its internal do-not-call list. Defendant Gateway violated 47 USC 227(c)(5) as codified under 47 CFR 64.1200(d) in addition to violating 47 USC 227(b) by placing the automated calls.

123. The Plaintiff noticed a 3-4 second delay when the calls connected and a person actually coming in the line, which is indicative of the calls being initiated with an automated telephone dialing system as defined by the TCPA, 47 USC 227.

124. The Plaintiff should be the last person in the world the receive calls from the Defendants, particularly after suing them previously, and any phone calls by or on behalf of Defendant RCF are evidence of the failure of Defendant Gateway to use and train their agents on the use of an internal do-not-call list. No reasonable person is going to continue telemarketing to someoen who just sued them for illegal telemarketing.

**Actions and Liability for Defendants RCF, LLC, RCF II, LLC and Craig hecker**

125. Defendants RCF, LLC and RCF II, LLC are directly liable for each and every call initiated by or on behalf of the entities to the Plaintiff after August 1, 2016.

126. Craig Hecker is personally liable for all calls placed by or on behalf of Defendants RCF, LLC and RCF II, LLC after August 1, 2016.

127. Craig Hecker failed to prevent telemarketing calls to the Plaintiff despite having been sued by the Plaintiff for placing illegal telemarketing calls by Defendant RCF, LLC. Defendant Hecker should have placed the Plaintiff's cell phone on an internal do-not-call list after receiving the Plaintiff's first lawsuit, but he failed to take reasonable actions to prevent violations of the Plaintiff's rights under the TCPA, and thus additional calls continued to be delivered to the Plaintiff. Defendant Hecker should have informed any 3rd parties that he is going to hire that under no circumstances, come hell or high water should a telemarketing call be placed to 615-348-1977 and taken severly punitive measures to punish a 3rd party that initiated a call to the Plaintiff's cell phone. .

128. Craig Hecker hired Gateway Sales and Marketing, LLC and personally contracted with Defendant Gateway for telemarketing services, but failed to take reasonable and prudent steps and training to safeguard the Plaintiff from additional telemarketing calls. The Plaintiff was already informed by employees of Defendant RCF working at the direction of Craig Hecker that they had no internal Do-not-call list and did not have a written policy to provide the Plaintiff pertaining to the use of one. To date, no written policy has been produced to the

Plaintiff despite previously inquiring about obtaining one from Defendant RCF and Craig Hecker.

129. Craig Hecker personally participated in crafting policies and procedures used by Defendant RCF to utilize automated telephone dialing systems and 3rd party lead generation companies that they know will violate the law and place illegal telemarketing calls to consumers.

130. Each and every call was a willful and knowing violation by Defendant Craig Hecker, RCF, LLC, and RCF II, LLC. Each of the defendants was on notice that the Plaintiff did not want to receive telemarketing calls from them initiated by an automated telephone dialing system or pre-recorded message as they were previously sued for this conduct. Despite this clear knowledge of the fact, they decided to place illegal telemarketing calls to the very same phone number at the bottom of each and every filing in the previous complaint.

131. Each and every call that began with an 786 prefix after August 1, 2016 appears to be initiated directly by Defendant RCF, LLC and Defendant RCF II, LLC at the direction of Craig Hecker. Every other call after August 1, 2016 appears to have been initiated on the behalf of Craig Hecker and Defendants RCF LLC and RCF II, LLC. For these calls, Defendant RCF LLC, RCF II, LLC and Craig Hecker are directly liable.

132. Defendants RCF LLC, RCF II, LLC and Craig Hecker are vicariously liable for all calls placed by Defendant Gateway and Telx Computers under the doctrines of

actual authority and ratification. Additionally, any other finding other than vicarious liability would undermine the deterrent effect of the TCPA.

133. Defendants RCF, LLC, RCF II, LLC and Craig Hecker contracted with Defendant Gateway and Telx Computers to engage in telemarketing via a written agreement. Craig Hecker and Deefendants RCF LLC and RCF II, LLC maintained control over the Defendants Gateway and Telx Computers via a written contract as well as controlling the payment for leads generated and could have terminated the agreement or suspended payments under the agreement.

134. Under the doctrine of ratification, Defendant RCF, LLC, RCF II, LLC and Craig Hecker knew that Defendants Gateway and Telx Computers would violate the TCPA and chose to accept the leads and business generated from those leads while knowing that these telemarketers were going to break the law. Defendant RCF and RCF II, LLC at the direction of Craig Hecker chose to look the other way and accept the leads and business generated by the illegal calls.

135. The Plaintiff's cell phone numbers are 615-212-9191, 615-348-1977, and 615-331-7262. The Plaintiff never consented to being called with an automated telephone dialing system to these numbers, and in fact made the clearest possible statements that he does not wish to receive telemarketing calls to these numbers by suing the Defendants in this court previously for making illegal telemarketing calls. Despite this, unwanted telemarketing calls continued to be placed to the Plaintiff at the direction of Defendant RCF, LLC, RCF II, LLC, and Craig Hecker.

136. The dates and numbers regarding the calls to **615-212-9191** are as follows:

137. from 305-260-6342 to 615-212-9191 on 9/6/2016 seven times.

138. from 786-449-0861 three times on 9/9/2016

139. from 786-358-9284 four times on 9/15/2016

140. from 786-358-9284 on 9/19/2016

141. from 786-350-3444 on 9/20

142. The Dates and numbers regarding the calls to **615-348-1977** are as follows:

143. On 8/20/2016 from 863-240-1862

144. on 8/10/2016, 8/19/2016, and 9/2/2016 all from 305-400-4752 to his cell phone 615-348-1977.

145. The dates and numbers regarding the calls to **615-331-7262** are as follows:

146. on from 786-231-1835  8/10/2016 twice, on 8/11/2016 once, on 8/12/2016 once

147. from 786-209-0019 on 8/16/2016, on 8/17/216 four times, on 8/19/2016, on 8/24/2016, on 8/25

148. From 786-233-9788 on 8/25/2016 twice,

149. From 786-350-3558 on 9/2/2016

150. From 787-209-0019 and 786-350-3558 on 9/6/2016

151. From 786-350-3558 three times and 786-209-0019 on 9/7/2016

152. From 786-350-3558 twice on 9/8/2016

153. From 786-209-0019 on 9/9/2016

154. From 786-233-6576 on 9/12/2016

155. All of these calls were initiated with an automated telephone dialing system, as defined by the TCPA, 47 USC 227. The phone calls had a characteristic 3-4 second delay when connecting and someone speaking to the Plaintiff. The Plaintiff spoke with employees of RCF, although at this point it is impossible to determine if they were working for RCF LLC or RCF II, LLC. Either way, the agents were working at the direction of Craig Hecker. The Plaintiff never consented to be called with an automated telephone dialing system or pre-recorded messagae, and the calls were not for any emergency purpose.

156. At no time did any of the calling 3rd party telemarketers state the entity they were calling from and they did not state a telephone number or address at which they may be contacted.

### Actual Damages

157. The Plaintiff alleges actual damages have been incurred in this case. The repeated and unwelcome phone calls constitue a common law invasion of privacy claim against the defendants as the Plaintiff has a right to be left alone.

158. The conduct of the defendants has resulted in the intentional infliction of emotional distress to include, trouble concentrating, frustruation, inconvenience, stress, and annoyance.

159. The Plaintiff also alleges that the he also suffered actual damages in the form of reduced data plan usage, reduced battery life, increased electrical charged for charging his cell phone battery more frequently.

## CAUSES OF ACTION:

## COUNT I

## Violations of the Telephone Consumer Protection Act (TCPA)

160. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

161. The foregoing actions by the Defendants constitute multiple breaches of the TCPA by placing calls with pre-recorded messages and initiated with an automated telephone dialing system for calls before August 1, 2016 and by placing calls initiated with an automated telephone dialing system after August 1, 2016 to the Plaintiff's cell phone that lacked the name or address of the entity placing the phone calls in violation of 47 USC(c)(5) as codified by the FCC's rulemaking under 47 CFR 64.1200(d)(4), 47 CFR 64.1200(b), and 47 CFR 64.1200(c) and failed to maintain an internal do-not-call policy and train their employees on the use of an internal do-not-call list.

## CAUSES OF ACTION:

## COUNT II

## Violations of the Telephone Consumer Protection Act (TCPA)

162. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

163. The foregoing actions by the Defendants constitute multiple breaches of the TCPA by placing unsolicited and unwelcome telephone calls to the Plaintiff's cell phone. These phone calls also violated the TCPA by having an pre-recorded message and were initiated by an automated telephone dialing system in violation of 47 USC 227(b) for calls placed before August 1, 2016 and were initiated by an automated telephone dialing system, which also violates 47 USC 227(b) for calls placed after August 1, 2016.

## PRAYER FOR DAMAGES AND RELIEFS

A. WHEREFORE, Plaintiff, Cunningham, respectfully prays and requests that judgment be entered against each and every defendant for the following:

B. Statutory damages of $3000 for each phone call.

C. Pre-judgment interest from the date of the phone calls.

D. Attorney's fees for bringing this action to the extent that the Plaintiff incurs them from hiring an attorney in this case; and

E. Costs of bringing this action; and

F. For such other and further relief as the Court may deem just and proper

I, Craig Cunningham, Affiant, hereby attest to and certify that the facts contained in the foregoing complaint are true and correct to the best of my knowledge, information and

belief and that a true and correct copy of the foregoing was sent to the defendants in this case.

Respectfully submitted,

Craig Cunningham
Plaintiff,

Pro-se, 12/5/2016

Mailing address:

5543 Edmondson Pike, ste 248 Nashville, TN 37211

Nashville, Tn 37211

615-348-1977

)    Craig Cunningham

)    Plaintiff, pro se

)

)         **v.**

**CIVIL ACTION NO.** 3:16-cv-02629

)

)    Rapid Capital Funding, LLC/RCF et al

)

)    Defendants.


### Plaintiff's Certificate of Service

**1.** I hereby certify that a true copy of the foregoing was mailed to the Defendants via USPS first class mail on 12/5/2016 to:

RCF, LLC and Craig Hecker at 11900 Biscayne Blvd, ste 201 Miami, FL 33181

Merchant Worthy, Inc. Robert Bernstein, Bari Bernstein, Mace Horowitz, and Spectrum Health Solutions, Inc, dba Spectrum Lead Generation at 150 SW 12th ave. ste. 310, Pompano Beach, FL 33069.

Paul and Ada Maduno, Luis Martinez, GIP Technology, and GRS Telecom at 4142 West 177th Street, Torrance, CA 90504.


Craig Cunningham
Plaintiff,

Pro-se

5543 Edmondson Pike ste 248

Nashville, TN 37211, 615-348-1977 12/5/2016

Craig Cunningham
5543 Edmondson Pike
Nashville, TN 37211

FILED

DEC 05  3  DB

U.S. ................. KIEP
M      E DISTRICT OF TN.

US District Court
801 Broadway
Nashville, TN 37203

FILED

DEC 05 2016  DB

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN.